UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OLGA DESPOTIS TRUST, | ) |
| | ) |
| Plaintiff, | ) No. 4:12-CV-2369 RLW |
| | ) |
| v. | ) |
| | ) |
| THE CINCINNATI INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment. These matters are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Olga Despotis Trust ("the Trust") owns a commercial property, located at 3825 South Lindbergh Boulevard in Sunset Hills, Missouri ("the Property"), which was damaged by a tornado on December 31, 2010. (Defendant's Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 118, ¶1). At the time of tornado, the Property was insured by Defendant the Cincinnati Insurance Company ("Defendant") under Policy No. EBP 0030517 ("The Policy"). (DSUMF, ¶2). The Trust made a clam under the Policy for the damage done by the tornado. (DSUMF, ¶2).

In February 2011, Plaintiff submitted a Proof of Loss stating that the "Actual Cash Value" (ACV) of the Property at the time of loss was $1,400,000.00. (DSUMF, ¶4). In April 2011, Defendant paid to the Trust approximately $800,000 as the ACV. (ECF No. 41-5). As a

result of the disagreement as to the ACV, Defendant invoked the appraisal provision of the Policy on April 18, 2011. (DSUMF, ¶5).

On December 21, 2012, Plaintiff filed a three-count Complaint seeking damages for Breach of Contract and Vexatious Refusal to Pay. Count III of Plaintiff's Complaint sought declaratory judgment regarding the appraisal provisions of the Policy. On April 20, 2014, the Trust's counsel rejected the demand for appraisal. (DSUMF, ¶6). On October 17, 2014, the Court granted Defendant partial summary judgment on Count III of the Complaint and ordered the parties to participate in an appraisal with an umpire. On August 4, 2015, the Appraisal Award Memorandum stated that the Replacement Cost Loss was $1,500,000, the Actual Cash Value Loss was $1,056,000, and the Loss of Rents was $94,000. The Actual Cash Value Loss was agreed to by Defendant's representative and the umpire. *See* ECF No. 122-3. Only Counts I and II of Plaintiff's Complaint remains pending.

## DISCUSSION

### I. MOTIONS FOR SUMMARY JUDGMENT

#### A. Motion for Summary Judgment Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly

preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Finally, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson*, 643 F.3d at 1043 (citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010), *citing Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006), *and quoting Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)).

**B. Defendant's Motion for Summary Judgment (ECF No. 117)**

Defendant asserts that the Trust's claims in Counts I and II fail as a matter of law because they are essentially claims for "anticipatory breach," which is not recognized in Missouri.

### 1. Breach of Contract in Count I

"When an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. 2000). "Damages for breach of contract are limited to the loss of the benefit itself." *Id*. The damage amount should place the insured in the position he would have been in had the contract been performed. *Id. (citing Boten v. Brecklein,* 452 S.W.2d 86 (Mo.1970)).

Defendant claims that the Trust's claim for replacement cost is not available in this action. Defendant maintains that, under the Replacement Cost Amendatory Endorsement, repair or replacement of the damaged property is a condition precedent to a "replacement cost" payment. (ECF No. 118 at 7-8). The Replacement Cost Amendatory Endorsement provides, in pertinent part:

SECTION 1—PROPERTY E. Property Loss Conditions, 5. Loss Payment, d.(1) is deleted and replaced by the following:

(1) At replacement cost (without deduction for depreciation), subject to the following:

  (a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

  1) The Limit of Insurance under this policy that applies to the lost or damaged property;

  2) The cost to replace, on the same "premises", the lost or damaged property with other property:

   a) Of comparable material and quality; and

   b) Used for the same purpose; or

3) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

(b) You may make a claim for "loss" covered by this insurance on an "actual cash value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "actual cash value" basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the "loss."

(c) We will not pay on a replacement cost basis for any "loss":

1) Until the loss or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same purpose as the lost or damaged property; and

2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of the "loss."

\*\*\*

(DSUMF, ¶10). Defendant argues that its obligation to pay the replacement cost was never triggered because the Trust never made a replacement or repairs within two years of the date of the loss, as required under the Policy. Defendant relies on *Porter v. Shelter Mut. Ins. Co.*, 242 S.W.3d 385, 392 (Mo. Ct. App. 2007), which held that, under the terms of the policy, the policyholders were "not entitled to the full replacement cost of the damage until actual repair or replacement occurs." Therefore, Defendant characterizes the Trust's claim for replacement cost as one for anticipatory breach, which cannot be maintained.

In response, the Trust contends that Defendant has misconstrued its claim as one for "anticipatory repudiation." (ECF No. 128 at 1). Rather, the Trust maintains that Defendant

breached its contract with the Trust by not paying the correct ACV payment in March 2011. As a result of not making the correct ACV payment, the Trust asserts that it could not "rebuild" the Property. (ECF No. 128 at 1). The Trust is seeking: (a) prejudgment interest, (b) a finding of vexatious refusal to pay due to the delay in paying the correct ACV amount, (c) penalties and attorneys' fees for failing to pay the ACV amount, (d) tolling or voidance of the two year requirement to initiate rebuilding due to Cincinnati's untimely payment of the ACV amount, (e) payment of the replacement cost, (f) a finding of vexatious refusal due to Defendant's refusal to pay the replacement cost, and (g) penalties and attorneys' fees because of Defendant's failure to pay replacement costs. (ECF No. 128 at 2). The Trust notes that, in 2011, Defendant determined that the ACV of the Property was approximately $800,000 and paid that sum to the Trust. The Trust argues that the Court-ordered appraisal process resulted in a determination that the ACV was $1,056,000. *See* ECF No. 122-3, Appraisal Award Memorandum. The Trust contends that Defendant and its agents used the improper calculation for ACV in 2011 and denied the Trust of $256,000, which was only obtained after years of litigation. (ECF No. 128 at 2). The Trust contends that this delayed award creates an issue of material fact because the Trust was entitled to immediate payment for the ACV of the loss, which the Trust claims it would have used as "seed money" to start repairs. (ECF No. 128 at 2). The Trust asserts that this case is different from *Porter v. Shelter Mut. Ins. Co.*, 242 S.W.3d 385 (Mo. Ct. App. 2007) because in *Porter* the ACV was not disputed, but in this case the ACV was not paid within the two (2) year replacement period. (ECF No. 128 at 4). The Trust maintains that Defendant failed to provide the full ACV payment and failed to pay replacement costs and, therefore, "did not have the funds or commitment necessary to engage a contractor to commence replacement construction." (ECF No. 128 at 5). By this means, the Trust asserts Defendant avoided having to pay the full cost of

replacing the building. (ECF No. 128 at 5). The Trust maintains that the reason that construction was not underway within two years was because Defendant "failed to provide the requisite funds to Plaintiff in both the form of a correct calculation of ACV and a commitment for replacement costs." (ECF No. 128 at 6). The Trust also claims that Defendant's agents did not use the appropriate method of determining the ACV, which resulted in Defendant's failure to timely pay the ACV for the Property. (ECF No. 128 at 6-10). The Trust further claims that Defendant was in breach of the Policy because Defendant's representatives failed to provide any meaningful response to the questions the Trust posed regarding Defendant's position as to replacement costs, even though Defendant was obligated to give notice of its intentions within 30 days after receiving notice of Proof of Loss. (ECF No. 128 at 11-12). The Trust again blames Defendant for delaying the appraisal process by refusing to agree to be bound by the appraiser's award and for failing to select an appraiser. (ECF No. 128 at 12-13). Finally, the Trust argues that Defendant falsely represented in 2011 correspondence that the "replacement cost must be completed within 180 days following the date of the loss" rather than the two years provided for in the Policy. (ECF No. 128 at 13 (citing ECF No. 118-7)). Without any citation to the record, the Trust asserts that "[t]his incorrect representation was intended to further impeded the Trust's ability to obtain replacement cost for its loss and in the context of its timing a flat out a refusal to honor its obligations under the replacement cost rider." (ECF No. 128 at 13).

The Court holds there was no breach of contract as a matter of law. As previously discussed, a claim for breach of contract requires the wrongful refusal of payment to an insured. *Overcast*, 11 S.W.3d at 67. The undisputed evidence before the Court, however, indicates that there was neither a refusal of payment, nor that it was wrongful. As stated, the Trust asserts that Defendant breached the Policy by failing to pay the ACV in March 2011, which resulted in the

Trust not having sufficient "seed money" to rebuild and/or failing to provide the replacement cost for the Property. The Trust's argument fails for several reasons. First, the Trust claim for breach of contract is premature. The Trust cannot maintain a claim for breach of contract based upon a payment that occurred in March 2011, prior to when the parties fully engaged in the appraisal process provided for in the Policy. Defendant paid the Trust the undisputed portion of the loss shortly after the Proof of Loss was submitted. The parties were then required to participate in the appraisal process, which was completed on August 4, 2015. *See* ECF No. 122-3. As previously discussed in this Court's October 17, 2014 Order, the parties were required under the Policy to participate in the appraisal process and the Trust cannot base a breach of contract claim based upon events prior to the appraisal. See *BBMB, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, No. 4:09CV1879 TIA, 2011 WL 2149101, at *1 (E.D. Mo. May 31, 2011) ("Missouri courts have held that appraisal provisions in insurance policies are binding and enforceable."); *Lance v. Royal Ins. Co.,* 259 S.W. 535, 535 (Mo.Ct.App.1924) ("A provision in an insurance policy for the amount of the loss to be ascertained by appraisers in case of disagreement in relation thereto is binding and enforceable, and must by complied with before a right of action accrues to the insured."). The Court holds that Plaintiff's cause of action for breach of contract did not accrue until completion of the appraisal process.

In addition, the Trust cannot state a claim for breach of contract based upon Defendant's failure to pay the replacement costs when the Trust failed to satisfy the conditions for the payment. Under the Policy, Defendant would not pay the replacement cost unless the damaged Property was actually replaced within 2 years of the date of the loss. (DSUMF, ¶10). The Trust has not satisfied this condition and, therefore, Defendant was under no obligation to pay the replacement cost. *See Porter*, 242 S.W. 3d at 392.

Likewise, the Court is not persuaded that the Trust was precluded from rebuilding based upon the alleged undervaluation of the ACV. The Trust cites to Defendant's undervaluation by $256,000 of the ACV as a basis for not rebuilding and requests that the Court waive the requirement that the Trust have construction underway within two years. The Trust has not provided evidence that an additional $256,000 would have been sufficient "seed money" to cause it to start the rebuilding process. Moreover, the Court holds that the Trust is confusing the issues of ACV and replacement costs. The Trust failed to rebuild within two years as required under the Policy. Defendant's alleged underpayment of ACV is irrelevant to the replacement cost.

Finally, the Court does not find that Defendant breached the Policy through its handling of the Trust's claim. Most of the Trust's complaints regarding Defendant's administration of the Trust's claim have already been discussed in this Court's prior Memorandum and Order (ECF No. 74). The Court holds that Defendant did not breach its contract with the Trust through its handling of the appraisal process. Moreover, the Trust's citation regarding Defendant's "failure to provide any meaningful response" is not supported in the record. *See* ECF No. 128 at 11-12. In the cited deposition testimony, Dr. Despotis states his general dissatisfaction with Defendant's handing of his claim. Dr. Despotis does not provide any dates for any of these alleged discussions regarding replacement costs. (ECF No. 122-21, 96:6-97:3). The Trust's citations to Dr. Despotis's deposition are insufficient to create an issue of material fact. Finally, the Trust has provided no evidence to support its contention that Defendant's April 12, 2011 miscommunication that the "replacement cost must be completed within 180 days following the date of the loss," rather than the two years provided in the Policy, caused it not to pursue replacement of the Property. Outside of its bald assertion of prejudice, the Trust has not provided any evidence that this incorrect information impeded its ability to rebuild the Property.

Based upon the foregoing, the Court grants Defendant's Motion for Summary Judgment with respect to Count I.

### 2. Vexatious Refusal to Pay in Count II

Under Missouri law, "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract. Damages for breach of contract are limited to the loss of the benefit itself." *Overcast,* 11 S.W.3d at 67; *Champ Realty Co. v. Am. States Ins. Co.*, No. 4:10CV1058 JCH, 2010 WL 2985676, at *2 (E.D. Mo. July 23, 2010). The Missouri legislature has provided another avenue for recovery when there is a vexatious refusal to pay, under Mo. Rev. Stat. § 375.420. "[Section 375.420] compensates an insured for consequential damages, such as attorneys fees and interest associated with collection, when the insurance company refuses to pay without reasonable cause or excuse." *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, 2006 WL 1722278 at *2 (E.D. Mo. Jun.19, 2006) (internal quotations and citation omitted).

Defendant also maintains that the Trust cannot state a claim for vexatious refusal to pay. Defendants argue that the Trust cannot state a claim for vexatious refusal to pay because Missouri does not recognize the Trust's theory of "anticipatory breach." (ECF No. 118 at 9-10). Furthermore, Defendant asserts that the Trust is not entitled to a "replacement cost" payment because no replacement or repair of the building has been undertaken. Therefore, Defendant contends that Plaintiff's allegations that Cincinnati acted vexatiously by refusing to make a "replacement" cost placement when one was not due cannot give rise to a valid claim for vexatious refusal. (ECF No. 118 at 9-10)

The Trust asserts that it is entitled to a finding of vexatious refusal to pay based upon Defendant's failure to pay the correct ACV in 2011 and failure to pay replacement costs. The

Trust maintains that payment of the ACV pursuant to the appraisal provision under the Policy does not preclude a claim for vexatious refusal. (ECF No. 128 at 11). The Trust relies on the Missouri Supreme Court's decision in *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454 (Mo. 2006) that the insurer's payment of the policy limits after the insured filed suit did not bar her claim for vexatious refusal to pay. (ECF No. 128 at 11). The Missouri Supreme Court held that "[a]dopting [the insured's] argument would permit an insurance company to refuse payment and avoid liability under section 375.420 by simply paying prior to trial" which would eliminate section 375.420. *Dhyne*, 188 S.W.3d at 457.

The Court grants summary judgment in favor of Defendant on the Trust's vexatious refusal to pay claim. As an initial matter, the Court holds that the Trust's claim for vexatious refusal to pay fails because the Trust fails to state a claim for breach of contract. "The law is well-settled that for an insured to obtain a penalty for an insurance company's vexatious refusal to pay a claim, the insured must show that the insurance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 108 (Mo. Ct. App. 2004). Because Defendant was justified in its action and did not breach its contract with the Trust, the Trust's vexatious refusal to pay claim fails as a matter of law.

The Trust's vexatious refusal to pay claim also fails on its own merits. The Trust's vexatious refusal to pay claim is based upon Defendant's failure to pay the additional $256,000 ACV prior to the parties participation in the appraisal process and Defendant's failure to pay the replacement cost. With respect to the former, the Court holds that the Trust cannot maintain a claim for vexatious refusal to pay based upon the time when the parties were still engaged in the appraisal process. *See BBMB, Inc.*, 2011 WL 2149101, at *1 (appraisal provisions are binding

and enforceable). The Trust likens this case to *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454 (Mo. 2006). In *Dhyne*, however, State Farm's claim representative stated unequivocally to the insured that State Farm would not cover her claim. Given this refusal, the Missouri Supreme Court held that plaintiff Dhyne was not foreclosed from filing suit under section 375.420. *Dhyne*, 188 S.W.3d at 457-58. Here, in contrast, Defendant agreed to cover the Trust's claim and paid the Trust $800,000 as the ACV of the Property. The Trust now asserts that the $800,000 was not the ACV of the Property, as evidenced by the $1,056,000 ACV award, agreed to by Defendant's representative and the umpire. *See* ECF No. 122-3. However, unlike in *Dhyne*, the Trust had not exhausted its remedies under the Policy. The Policy included an appraisal provision, allowing the parties to resolve their different valuations without judicial intervention. Thus, the Court holds that the Trust's claim for vexatious refusal before participating in the appraisal process cannot state a claim for vexatious refusal. In fact, the Court believes that any contrary holding would subvert the purpose of the appraisal process. The appraisal process provides an opportunity for the parties and a neutral umpire to come together to determine the correct award according the Policy terms. If a cause of action could be maintained because an appraisal award was greater than the initial valuation, then the insurer would have no incentive to increase or adjust its valuations, lest the insured fear a claim for vexatious refusal to pay. In other words, the Court does not want to penalize the insured from fully engaging in the appraisal process by allowing a change in its position to be used against the insured in a vexatious refusal to pay claim. Because the parties were still engaged in the appraisal process under the Policy when it increased its ACV, the Court grants summary judgment in favor of Defendant on the vexatious refusal to pay claim.

For all of the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment with respect to Count II.

### C. The Trust's Motion for Summary Judgment (ECF No. 119)

As previously discussed, the Trust has failed to create an issue of material fact with respect to any of its claims. Therefore, the Court denies the Trust's Motion for Summary Judgment.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on all Remaining Counts of Plaintiff's Complaint (ECF No. 117) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 119) is **DENIED**.

An appropriate Judgment is filed herewith.

Dated this 29th day of February, 2016.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**